IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 30, 2019

## STATE OF TENNESSEE v. MICHAEL JEROME LEE

**Appeal from the Criminal Court for Knox County**
**No. 111178      G. Scott Green, Judge**

_____

### No. E2018-01451-CCA-R3-CD

_____

The Defendant, Michael Jerome Lee, pleaded guilty to burglary of a vehicle and simple possession in exchange for an agreed concurrent sentence of five years, with the trial court to determine the manner of service of that sentence. After a hearing, the trial court ordered that the Defendant serve his sentence in confinement. On appeal the Defendant contends that the trial court erred when it denied him an alternative sentence. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Mark E. Stephens, District Public Defender; Jonathan P. Harwell and Jessica M. Greene, Assistant Public Defenders, for the appellant Michael Jerome Lee.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley D. McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the police apprehending the Defendant while he was breaking into a Jeep on May 25, 2017. With regard to this event, a Knox County grand jury indicted the Defendant for burglary of a vehicle, simple possession of a controlled substance, and public intoxication. At the guilty plea submission hearing, the parties agreed that the Defendant was a Range III offender, and the State informed the trial court that the parties had agreed that the Defendant would enter a guilty plea to burglary of an automobile and simple possession, in exchange for a five-year concurrent sentence and

dismissal of the third count, public intoxication. The parties informed the trial court that the Defendant intended to apply for probation and that the parties agreed to provide him access to an inpatient treatment program while he awaited sentencing.

The trial court then discussed the Defendant's plea with him. He ensured that the Defendant understood his rights and options. The trial court informed the Defendant that, after the sentencing hearing, the trial court could order the Defendant to serve the entirety of his sentence in confinement or some or none of his sentence in confinement. The Defendant acknowledged his understanding that the manner of service was to be determined by the trial court. The trial court then went through the individual rights that the Defendant waived when entering a plea of guilty.

The Defendant said that he was fifty-three years old, had completed the twelfth grade in school, and had no difficulty reading or writing. The Defendant said his only medication was for blood pressure, that he had not been forced or threatened to enter a plea, and that he had not been offered anything in exchange for his plea.

The State presented the following factual basis in support of the trial court accepting the Defendant's guilty plea:

> [T]he witnesses listed in the indictment would testify that on May the 25th of 2017 officers responded to [an address in Knox County] where a black male wearing a blue plaid shirt was breaking into a red Jeep. Upon arrival the red Jeep was located and the officers did observe this [D]efendant . . . with his entire body inside the vehicle on the left rear side and the soft top hanging open. The officers also observed the glove box to be open and there were several items strewn throughout the vehicle that the victim . . . stated had not been in that position prior to her getting back to her vehicle.
>
> This [D]efendant did admit to having entered the Jeep for the purpose of taking items that he could sell or trade for drugs.
>
> In addition, a pat down of this [D]efendant did reveal a small baggy containing a green leafy substance. That substance was later determined to be marijuana.

The trial court agreed to allow the Defendant to attend treatment, and set the sentencing hearing for after the Defendant completed treatment.

At the first sentencing hearing, the parties agreed to continue the case because the Defendant had been unable to attend treatment until his blood pressure was more

accurately managed. The parties further informed the trial court that the Defendant was subject to Community Supervision for Life for past offenses and that the probation department needed to interview him before his sentencing.

At the final sentencing hearing, the Defendant presented a certification of completion from inpatient treatment. The State posited that the Defendant should serve his sentence in confinement given his criminal history and the number of previous chances he had been given to deal with his drug problem. The State reminded the trial court that these offenses occurred while the Defendant was taking items to resell in order to obtain drugs, while he possessed marijuana, and while he had consumed alcohol. The State informed the trial court that the Defendant had an extensive criminal history and had not "done well" on probation. The Defendant had convictions for: public intoxication, failure to have a license, improper vehicle registration, and some other misdemeanors. The Defendant had also been previously convicted of rape and was required to participate in the Community Supervision for Life program as a result. He had pleaded guilty to violating this supervision in 2009 and 2011. The Defendant had also pleaded guilty to possession of drugs, evading arrest, casual exchange, two charges of criminal impersonation, two charges of aggravated burglary, theft, vandalism, improper use of a vehicle, two charges of aggravated assault, and two charges of stalking, among other offenses. The State said that the rape conviction was from 1989 and that, around that time, he also had convictions for burglary, robbery, and assault and battery.

The State informed the trial court that the Defendant had violated the terms of his probation several times, that his probation had been revoked and reinstated, and that he had several instances of new charges. The Defendant's last violation was when he had a positive drug screen in 2010. The Defendant had previously been given treatment. The State asked the trial court to order that the Defendant serve his sentence in confinement.

The Defendant's counsel asked the trial court to give the Defendant an alternative sentence. Counsel noted that this was essentially a property crime and that, while the Defendant had a history of criminal conduct, an alternative sentence should be considered. Counsel noted that the rape and robbery convictions were for conduct that occurred more than thirty years before. The next series of offenses occurred in 2000 and his last felony conviction was in 2009, ten years ago. The Defendant's last conviction was for driving without a license in 2015. Counsel noted that there had been a "reduction in [the Defendant's] criminal conduct . . . from his 20s to his 50s."

Counsel posited that the Defendant had cooperated with police when they found him burglarizing the Jeep, but he agreed that the Defendant had missed "a couple of arraignment dates." He said that the Defendant had "a child support issue" and was afraid to come to court for fear of being arrested. He noted, however, that the Defendant

turned himself in immediately after receiving court-ordered treatment and that doing so was a "marked change in behavior."

Counsel agreed that the Defendant was a career offender and that he received a benefit by pleading as a Range III offender. He reminded the trial court that the Defendant's last violation of his community supervision was in 2012, six years prior.

The Defendant informed the trial court that he wanted to live a sober life and be a productive citizen. The trial court applauded that decision but reminded the Defendant that he had an "awful" criminal history that included ten prior felony convictions, twenty prior misdemeanor convictions, and multiple violations of probation. The trial court found that the Defendant had also failed to appear for this case on several occasions because he was afraid he would be arrested for failing to pay his child support. The trial court noted that the Defendant had 296 days served toward his sentence already and that he was likely going to be eligible for parole soon, regardless of the outcome of the hearing. The trial court noted that the Defendant had already received a "break" in this case by pleading as a Range III rather than a career offender. The trial court then sentenced the Defendant to serve his sentence in confinement.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion when it ordered that he serve his sentence in confinement because, first, it did not make the necessary findings to order him to confinement and, next, it improperly denied an alternative sentence based upon "a distant history of criminal conduct." The State counters that the trial court appropriately exercised its discretion in ordering a sentence of full confinement.

The standard of review for questions related to probation or any other alternative sentence is "'an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2014) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the

4

laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2014). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b) (2014); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2014). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

The record supports the trial court's findings in this case. The trial court based its decision to deny an alternative sentence on the Defendant's criminal record and the Defendant's unsuccessful past attempts at alternative sentences or community supervision. These factors are well-supported by the evidence. The presentence report

shows numerous convictions as the trial court noted, ten felony convictions and at least twenty misdemeanor convictions.  The Defendant has demonstrated a history of non-compliance with community supervision for life, which he was on when he committed the present offenses.  While the Defendant's last offense was in 2015, his lengthy criminal history and his lack of success on community supervision for life both support the trial court's finding.  While the Defendant was eligible for probation because his sentence was five years, he failed to carry his burden of proving suitability for probation. The Defendant has not established that the trial court abused its discretion when it denied his request for an alternative sentence. The Defendant is not entitled to relief.

### III.  Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE